UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 14bk36072 |
| James Hicks, Jr., | Chapter 7 |
| Debtor. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court comes on for consideration on the Objection to Trustee's Final Report [Dkt. No. 46][1] (the "Objection")[2] filed by the City of Chicago (the "City") in the above-captioned case.  In the Objection, the City contests the final report on the grounds that the chapter 7 trustee, Phillip D. Levey (the "Chapter 7 Trustee"), has used the wrong legal rate for interest.  The City requests that the Court define "the legal rate" in 11 U.S.C. § 726(a)(5) as the state statutory rate, instead of the Chapter 7 Trustee's use of the federal judgment rate under 28 U.S.C. § 1961(a).

For the reasons more fully stated herein, the Objection is well taken.  The appropriate postpetition interest rate the Chapter 7 Trustee should provide to the City in this case is the state statutory rate under Illinois law.  As a result, the Objection will be and is, by order entered concurrent with this Memorandum Decision, GRANTED.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  28 U.S.C. § 1334(a).  The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code.  28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy courts for their districts.  28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy court judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy court judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case

---

[1]    References to docket entries in the above-captioned bankruptcy case will be denoted as "Dkt. No. ___."  References to claims filed in the above-captioned bankruptcy case will be denoted as "Claim No. ___."

[2]    While the Objection was misdocketed by the City, that error was corrected several days later.

under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court judge may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court judge may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1) & (c).  Absent consent, the bankruptcy court judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy court judge must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall,* 564 U.S. 462 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court judge hearing and determining the matter.  *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court judge's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

A trustee's final report and any objections to a trustee's final report (and thus the treatment of a secured creditors' claims thereunder) are matters concerning the administration of the estate and are thus core proceedings under the Bankruptcy Code.  28 U.S.C. § 157(b)(2)(A) & (B); *In re Pearson Bros. Constr., Inc.*, Case No. 15-90458, 2016 WL 3004534, at *2 (Bankr. C.D. Ill. May 17, 2016).  An objection to a trustee's final report in a chapter 7 bankruptcy case thus "stems from the bankruptcy itself," and thus may constitutionally be decided by a bankruptcy court judge.  *Stern*, 564 U.S. at 499.

It follows that the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Objection.

PROCEDURAL HISTORY

Prior to the commencement of the matter before the court, James Hicks Jr. (the "Debtor") had been a debtor in the above-captioned chapter 7 case (the "Chapter 7 Case").  The Chapter 7 Case was commenced on October 3, 2014.  Voluntary Petition [Dkt. No. 1].  On November 22, 2014, the Chapter 7 Trustee filed his report of no distribution, [Dkt. No. 12], and, as a result, the Clerk of the United States Bankruptcy Court for the Northern District of Illinois entered a discharge order on January 21, 2015.  [Dkt. No. 16].

More than seven years later, on May 26, 2022, the Debtor filed a motion to reopen the Chapter 7 Case so he could amend his schedules to disclose a personal injury claim in the reopened case.  [Dkt. No. 19].  The case was reopened on June 8, 2022.  [Dkt. No. 22].  The Chapter 7 Trustee was reappointed and, as a result of the Debtor's amended disclosures, all creditors were noticed of a bar date for submitting claims.  Notice Fixing Time for Filing Claims [Dkt. No. 27].  As a result, the City timely filed a proof of claim on October 3, 2022, in the reopened case and later amended the claim on January 11, 2023.  [Claim Nos. 1-1, 1-2].  The claims stated therein (the "City's Claim") contained a calculation of interest, nominally as the "legal rate of interest."  *Id.*

On February 21, 2023, the Chapter 7 Trustee filed his final report in the reopened Chapter 7 Case. Trustee's Final Report (TFR) [Dkt. No. 40] (the "Final Report").[3] In the Final Report, the Chapter 7 Trustee provided a treatment of the City's Claim with postpetition interest at a rate of 0.1% under section 1961(a) of title 28 (the "Federal Judgment Rate"), valued at $43.54. Final Report, at 8.[4]

The City objected. In the Objection, the City argues that the amount of postpetition interest provided it under the Final Report is incorrect. The City argues that it is owed $2,807.64 in postpetition interest, using the 9% interest rate under Illinois law. 735 ILCS 5/2-1303(a).

On March 22, 2023, the court conducted a preliminary hearing on the Final Report and the Objection. At that hearing, counsel to the Chapter 7 Trustee, counsel to the City and counsel to Patrick S. Layng, the United States Trustee to the Northern District of Illinois (the "United States Trustee") appeared. Both the Chapter 7 Trustee and the United States Trustee voiced their objections to the City's position. As a result, the court ordered briefing on the Objection. *See* [Scheduling] Order [Dkt. No. 52].[5]

On April 14, 2023, the United States Trustee filed the United States Trustee's Response to the City of Chicago's Objection to the Trustee's Final Report [Dkt. No. 53] (the "U.S. Trustee's Response"), stating that the proper interest for this case was the Federal Judgment Rate. On April 15, 2023, the Chapter 7 Trustee filed his Trustee's Response to Objection of the City of Chicago to Trustee's Final Report [Dkt. No. 54] (the "Chapter 7 Trustee's Response", and together with the United States Trustee's Response, the "Responses"). The Chapter 7 Trustee's Response and the U.S. Trustee's Response are, for all intents and purposes, the same. On May 10, 2023, the City filed its Reply in Support of the City's Objection to Trustee's Final Report [Dkt. No. 55] (the "Reply"). The court conducted a hearing on the fully briefed Objection, Responses and Reply on May 31, 2023, and as a request by the parties to argue the matter orally, heard those arguments on June 14, 2023. Thereafter the court took the matter under advisement.

This Memorandum Decision constitutes the court's ruling on the matter before it. In considering the matter, the court has considered the Objection, the Responses and the Reply as well as the arguments made by counsel at the hearing on June 14, 2023. Though these items do not constitute an exhaustive list of the filings in the Chapter 7 Case, the court has also taken judicial notice of the contents of the dockets and claims register in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

---

[3]     The Final Report was docketed as having been submitted by the United States Trustee but was that of the Chapter 7 Trustee.

[4]     No party has addressed and thus the court does not consider here the binding nature of a presumptively allowed claim which includes interest at one rate and a trustee's ability to afford such a claim interest at another rate without objecting to such claim.

[5]     For an unknown reason, that scheduling order was related to the Chapter 7 Trustee's request for final compensation, but was instead in relation to the Objection.

SUMMARY OF ISSUES PRESENTED

This issue is very narrow. The sole question before the court is what legal rate of interest should be afforded the City's Claim.

The Bankruptcy Code states that "the property of the estate shall be distributed . . . in payment of *interest at the legal rate* from the date of filing the petition . . . ." 11 U.S.C. § 726(a)(5) (emphasis added). The City argues that the legal rate of interest is governed by the solvent debtor exception,[6] and that, as a result, "the legal rate" for postpetition interest under section 726(a)(5) is 9% under Illinois's statutes. 735 ILCS 5/2-1303(a). To be clear, the Debtor is solvent in this Chapter 7 Case because regardless of the rate paid to the City on its Claim, all creditors will be paid in full and there is a surplus that will be returned to the Debtor. Final Report, at 8.

The United States Trustee and the Chapter 7 Trustee would have the court adopt recent out-of-circuit case law, ignore Seventh Circuit precedent and find that the solvent debtor exception did not survive the implementation of the Bankruptcy Code. As a result, they argue that "the legal rate" under section 726(a)(5) on postpetition interest is the Federal Judgment Rate. *See* 28 U.S.C. § 1961(a).

As a result, the central question that must be answered by this court is whether the solvent debtor exception remains and controls or whether Congress eliminated the solvent debtor exception when it enacted the Bankruptcy Code.

LEGAL STANDARD

It is standard practice that when determining the definition of a phrase in the Bankruptcy Code, a court performs a plain reading analysis of the text. As this court has previously stated:

> The Supreme Court has stated that "[t]he task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *In re Randle*, 358 B.R. 360, 362 (Bankr. N.D. Ill. 2006) (Doyle, J.), *aff'd*, No. 07C631, 2007 WL 2668727 (N.D. Ill. July 20, 2007). Where the language of the statute is unambiguous, no further inquiry is necessary or appropriate. *Sebelius v. Cloer*, 659 U.S. 369, 380 (2013); *In re Vecera*, 430 B.R. 840, 842 (Bankr. S.D. Ind. 2010) (*citing Griffin v. Oceanic, Inc.*, 458 U.S. 564, 570 (1982)). Absent contrary definitions within the statute itself, words in a statute are presumed to have their "ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993) (*citing Perrin v. United States*, 444 U.S. 37, 42 (1979)).

*In re Walker*, 502 B.R. 324, 327 (Bankr. N.D. Ill. 2013) (Barnes, J.).

When a term, phrase or legal concept has "accumulated settled meaning" under the common law and an argument is raised as to whether a statute does or does not alter that meaning, that

---

[6]     The solvent debtor exception holds that a creditor is entitled to the value of its claim and postpetition interest, at a rate determined by state statute or by agreement when a debtor is solvent. SOLVENT DEBTOR EXCEPTION, Norton Bankr. L. & Prac. 3d Dict. of Bankr. Terms § S175 (2023).

analysis shifts.  In such instances, the court must set aside its normal plain meaning analysis and instead infer that Congress intended to incorporate that meaning into the statute unless the new statute dictates the existing meaning should be done away with.  *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 329 (1981).  Put another way, if a term, phrase or legal concept used "in a statute … had at the time a well-known meaning at common law," it is to be presumed irrespective of any plain meaning analysis that the meaning of the term, phrase or legal concept was adopted by Congress.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 103 (2011) (*quoting Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 59 (1911)); *see also Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 977 (W.D. Wis. 2013) (same).

This analysis is no different when considering the Bankruptcy Code.  *Field v. Mans*, 516 U.S. 59, 69–70 (1995) (*citing Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989)).  If there is an accumulated and settled meaning and Congress wishes to vary from that adopting the Bankruptcy Code, the intention to differ must be clearly expressed in the Bankruptcy Code and can't be left to inferences or other considerations.  *Midatlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986).  Again, previous bankruptcy case law will not erode unless Congress makes a clear indication that it intends to depart from previous practice.  *P. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 564 (1990).  *But see In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) (concluding without authority or reference that the adoption of the Bankruptcy Code replaced "the entire apparatus" of pre-Bankruptcy Code practice).

Thus, for courts to find that Congress intended in the adoption of the Bankruptcy Code (or any amendment thereto) to abrogate prior bankruptcy practice, Congress must be "unmistakably clear" in its intent to do so and, where the intent is unclear, the prior practice will remain good law.  *Ultra Petroleum Corp. v. Ad Hoc Comm. of Opco Unsecured Creditors (In re Ultra Petroleum Corp.)*, 51 F.4th 138, 153–54 (5th Cir. 2022) (*citing Cohen v. de la Cruz*, 523 U.S. 213, 221–22 (1998)), *cert. denied* 143 S. Ct. 2495 (2023).  If Congress has the intent to override a judicially created concept with new legislation, the intent must be made with specificity and cannot be done through implication.  *Pac. Gas & Elec. Co. v. Ad Hoc Comm. of Holders of Trade Claims (In re PG&E Corp.)*, 46 F.4th 1047, 1058 (9th Cir. 2022) (*citing BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 546 (1994)), *cert. denied Pac. Gas & Elec. Co. v. Ad Hoc Comm. of Holders of Trade Claims*, 143 S. Ct. 2492 (2023).

As to the solvent debtor exception, as used in most case law and as argued here by the parties, it is really a combination of two related pre-Bankruptcy Code practices.

The first is the practice by which the theory takes its name, that despite a general pre-Bankruptcy Code practice of ceasing to accumulate or pay interest on claims post-bankruptcy, *see City of New York v. Saper*, 336 U.S. 328, 330–32 (1949); *Sexton v. Dreyfus*, 219 U.S. 339, 344 (1911), when a debtor is solvent or where collateral allows such interest to be charged, interest is afforded its claims.  *Saper*, 336 U.S. at 328 n.7; *Am. Iron & Steel Mfg. Co. v. Seaboard Air Line Ry.*, 233 U.S. 261, 264 (1914).  There is little doubt that Congress incorporated both exceptions into the Bankruptcy Code.  11 U.S.C. § 726(a)(5); 11 U.S.C. § 506(b).

The second practice, however, is ancillary to the first and is not so clearly adopted.  By this practice, the rate of interest such a claim is afforded is that which the claim would have been entitled outside of bankruptcy, the so-called "legal rate."  *Saper*, 336 U.S. at 336.  That legal rate, at least as was afforded by the Supreme Court in later cases, was the applicable state law rate.  *Am. Iron & Steel*, 233 U.S. at 264.  This is consistent with the Supreme Court's discussion of this issue in general, that

5

while interest will cease to accrue in most bankruptcies, if an exception exists, interest on a claim continues. *Id.* ("creditors were entitled to interest accruing after the adjudication"); *see also Sexton*, 219 U.S. at 346 ("[i]nterest and dividends accrued on some of the securities after the date of the petition"); *accord Saper*, 336 U.S. at 328 n.7.

Given the clear and controlling case law on the subject, there can be little doubt that in relation to the use of the term "legal rate" in pre-Bankruptcy Code practice had an accumulated settled meaning as to both practices. It meant the rate applicable under state law.

DISCUSSION

A.    The Parties' Arguments

The United States Trustee asserts that a plain reading of the Bankruptcy Code shows that Congress intended, despite the accumulated settled meaning afforded the phrase "legal rate" in the context of the solvent debtor exception, when Congress adopted the first practice in section 726(a)(5), it nonetheless meant to discard the second and redefine the "legal rate" as the Federal Judgment Rate. He believes that Congress wrote section 502(b)(2),[7] which specifically excludes from claims unmatured interest, to specifically do away with the solvent debtor exception.

The United States Trustee concedes that section 726(a)(5) allows for interest at the legal rate. He argues that the language in a separate section, section 506(b), makes clear that section 726(a)(5)'s use of the term legal rate was meant to be limiting. In section 506(b), Congress writes that when a claim is oversecured, "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). Thus, while an oversecured creditor is allowed "interest on such claim," a creditor of a solvent debtor is afforded only "interest at the legal rate."

The United States Trustee believes that if Congress had intended for section 726(a)(5) to define "the legal rate" as the statutory rate or rate by agreement, Congress would have worded section 726(a)(5) as it did section 506(b).

Second, the United States Trustee argues that the use of the word "the" in section 726(a)(5) is meant to point to a specific interest rate to be used uniformly across the country and not a rate determined by agreement or state statute. The Chapter 7 Trustee adopts each of these arguments.

In contrast, the City argues that not only did Congress not intend to eliminate the solvent debtor exception, but in fact clearly intended to incorporate its practice into the Bankruptcy Code. Clearly the provisions of section 726(a)(5) and section 506(b) showed a Congressional intent to afford interest in the two exceptions contained within the solvent debtor exception. Further, by use of the phrase "legal rate" in section 726(a)(5), a term with an accumulated and settled pre-Bankruptcy Code meaning without expressing rejecting that meaning, Congress must be deemed to have adopted that pre-Bankruptcy Code meaning. Finally, the City argues that had Congress intended for the Federal Judgment Rate to supplant the accumulated settled meaning of "legal rate,"

---

[7]    Section 502(b)(2) states that if a party in interest objects to a claim or interest the Court "shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that such claim is for unmatured interest." 11 U.S.C. § 502(b)(2).

6

it would have and should have made reference to title 28 in section 726(a)(5). The City points to many other sections in the Bankruptcy Code that explicitly reference title 28, which demonstrates that had Congress wanted to supplant standard pre-Bankruptcy Code bankruptcy practice it could have easily done so in a manner similar to how Congress wrote other sections of the Bankruptcy Code.

While the omissions weigh equally on both sides and are equally compelling, all that results is no clear indication of Congressional intent. Ordinarily, the Supreme Court's accumulated settled meaning test would result then in the solvent debtor exception applying to define the legal rate under section 726(a)(5). The United States Trustee and the Chapter 7 Trustee would have the court instead look to recent non-circuit law and conclude otherwise. The court will consider that case law, both pro and con.

B.      The Relevant Case Law

        1.      *Cases Rejecting the Solvent Debtor Exception*

                a.      <u>*Cardelucci*</u>

The United States Trustee and Chapter 7 Trustee rely on a Ninth Circuit case to support their argument that "the legal rate" of interest on the claim of an unsecured creditor is the Federal Judgment Rate and not the rate by agreement or state statute. *Onink v. Cardelucci* (*In re Cardelucci*), 285 F.3d 1231 (9th Cir. 2002).

In *Cardelucci*, the debtor and an unsecured creditor, while they agreed that the creditor was owed postpetition interest, disagreed on the rate of interest. The debtor believed the interest rate should be the Federal Judgment Rate while the creditor believed the correct interest rate was the state statutory rate. *Id.* at 1233.

In taking up the matter on appeal, the Ninth Circuit concluded that Congress intended for "the legal rate" in section 726(a)(5) to be the Federal Judgment Rate. *Id.* at 1234. The court also stated that using the word "the" in "the legal rate" instead of "a" demonstrates Congress wanted to use a single interest rate to be applied uniformly. *Id.* at 1234–35. According to it, a single, unified federal rate would make sense for the final outcome of a federal case in federal court. *Id.* at 1235. The Ninth Circuit based its holding on public policy concerns. It decided that public policy, not statutory language or controlling case law, favored "the legal rate" being so determined. By using the Federal Judgment Rate there would be equity and fairness amongst the creditors and it would be easier for the trustee to administer the estate in a "judicially efficient and practical manner." *Id.* at 1236.

        2.      *Cases Adopting the Solvent Debtor Exception*

                a.      <u>*Ultra Petroleum*</u>

In *Ultra Petroleum*, the Fifth Circuit considered a creditor's right to interest under chapter 11 of the Bankruptcy Code where a debtor had become solvent postpetition as a result of a sharp increase in the cost of natural gas. *Ultra Petroleum Corp. v. Ad Hoc Comm. of Opco Unsecured Creditors* (*In re Ultra Petroleum Corp.*), 51 F.4th 138, 142 (5th Cir. 2022), *cert. denied* 143 S. Ct. 2495 (2023). While the debtor proposed a bankruptcy plan that would have paid postpetition interest at the Federal

Judgment Rate, the creditors objected. *Id.* The creditors argued that their interest should be as was afforded them under their state law-governed contracts. *Id.*

The Fifth Circuit took up the issue on appeal and found that the solvent debtor exception did survive the enactment of the Bankruptcy Code. *Id.* at 150–51. As a result, it held that any suspension of postpetition interest under section 502(b)(2) was itself suspended. *Id.* In reaching this conclusion, the Fifth Circuit stated that had Congress intended to abrogate the solvent debtor exception with the implementation of section 502(b)(2), they would have explicitly said so. *Id.* at 152.

Interestingly, the Fifth Circuit also concluded that the Federal Judgment Rate is a floor, not a ceiling on the "legal rate." *Id.* at 159. It held that had Congress intended for the Federal Judgment Rate to be applied in every instance of a solvent debtor, Congress would have specifically cross-referenced section 1961. *Id.*

> b.       *Dvorkin Holdings*

In *Dvorkin Holdings,* the District Court for the Northern District of Illinois held that in a surplus chapter 11 case, creditors would be paid the interest rate pursuant to the terms of their contracts with the debtor and not the Federal Judgment Rate. *Colfin Bulls Fundings A, LLC v. Paloian* (*In re Dvorkin Holdings, LLC*), 547 B.R. 880, 883 (N.D. Ill. 2016). While it is argued that the ruling was vacated by agreement of the parties, the opinion stands as good law in the legal databases and nevertheless remains a good indication of the District Court's thoughts on this issue.

In *Dvorkin Holdings*, a plan proposed by a chapter 11 trustee jointly with certain interest holders proposed to pay creditors postpetition interest at the "legal rate." *Id.* at 883–84. A creditor objected to the plan and proposed an alternative plan, claiming the postpetition interest should be the regular and default interest rates pursuant to the corresponding promissory note. *Id.* at 884. The bankruptcy court rejected the creditor's plan and approved the plan set forth by the trustee. *Id.* at 885.

On appeal, the District Court held that "the legal rate" in section 726(a)(5) is not limited to the Federal Judgment Rate when a debtor is solvent. *Id.* at 891. The court stated that the pre-Bankruptcy Code bankruptcy practices "inform[] our understanding of the language of the code." *Id.* at 893 (*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 10 (2000) (citations omitted)). As a result, the court concluded that Congress did not intend to "replace the pre-Code rule that in cases involving a surplus bankruptcy estate, the bankruptcy court should 'enforce creditors' rights according to the tenor of the contracts that created those rights'" or that Congress intended to mandate the use of the Federal Judgment Rate in section 726(a)(5). *Id.* at 893–94 (*quoting In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 791 F.2d 524, 528 (7th Cir. 1986)). The court stated that there is no "bright line" rule that the Federal Judgment Rate is the only rate that may be used in section 726(a)(5). *Id.* at 894.

> c.       *PG&E*

The Chapter 7 Trustee also relies on the *PG&E* case to further support his argument that the Federal Judgment Rate is "the legal rate" under section 726(a)(5), *Pac. Gas & Elec. Co. v. Ad Hoc Comm. of Holders of Trade Claims (In re PG&E Corp.),* 46 F.4th 1047, 1055 (9th Cir. 2022), *cert. denied*

*Pac. Gas & Elec. Co. v. Ad Hoc Comm. of Holders of Trade Claims*, 143 S. Ct. 2492 (2023), but it belongs instead in the cases adopting the solvent debtor exception.

In *PG&E*, the Ninth Circuit clarified its earlier ruling in *Cardelucci* in determining the appropriate postpetition interest rate under section 1124(1) of the Bankruptcy Code. *Id.* at 1052. In this case, the debtor was solvent at the time of filing for bankruptcy and was solvent throughout the course of its bankruptcy. *Id.* at 1051. In its chapter 11 plan, the debtor offered creditors postpetition interest at the Federal Judgment Rate, creditors argued for postpetition interest at the contract rate. *Id.* Rather than strictly following *Cardelucci*, the Ninth Circuit reversed the bankruptcy court's conclusion that the creditors would only receive postpetition interest at the Federal Judgment Rate, instead finding that the unimpaired creditors were owed the interest rate set by the parties' contractual obligations. *Id.*

The distinguishing factor to the Ninth Circuit was evidently whether or not the creditors were impaired. While determining whether the treatment of impaired creditors under a chapter 11 plan passed the best interests test, 11 U.S.C. § 1129(b), might still be governed by *Cardelucci*, in determining whether or not the failure to pay creditors interest results in their impairment under section 1124(1), the solvent debtor exception still applied. The Ninth Circuit, after reviewing the Bankruptcy Code's text, history and structure, concluded that the solvent debtor exception was not abrogated by the Bankruptcy Code and that in fact the Bankruptcy Code requires the court to leave the creditors "legal, equitable, and contractual rights" "unaltered" pursuant to section 1124(1), "including their equitable right to receive the bargained-for postpetition interest under the solvent-debtor exception." *Id.* at 1053 (*citing Cohen*, 523 U.S. at 221). The court specifically determined that section 726(a)(5) is inapplicable to cases where a creditor has an unimpaired claim. *Id.* at 1057.

C.     Analysis

The foregoing case law, while interesting, isn't ultimately helpful to the United States Trustee and Chapter 7 Trustee in determining the outcome of this matter. While they can take some shelter under *Cardelucci*'s reasoning, the weight of the case law holds in favor of the City's position. The Ninth Circuit's clarification to *Cardelucci* in *PG&E* is particularly concerning.

Instead, the weight of the case law favors the City. Not only do *Ultra Petroleum* and *Dvorkin Holdings* clearly support the City's argument that the solvent debtor exception continues to apply and control, but *Dvorkin Holdings* also makes clear that there exists controlling case law on this question in the Seventh Circuit.

In *Fesco Plastics*, the Seventh Circuit was asked to consider the appropriateness of interest on an impaired creditor's claim. *In re Fesco Plastics Corp., Inc.*, 996 F.2d 152, 155–56 (7th Cir. 1993). In considering the request and the application under section 726(a), the Seventh Circuit in *Fesco Plastics* stated as follows:

> The age-old rule in bankruptcy, adopted from the English system, is that interest on claims stops accruing when the bankruptcy petition is filed. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 246 (1989); *Nicholas v. United States,* 384 U.S. 678, 682 (1966); *Bruning v. United States,* 376 U.S. 358, 362 (1964); *New York v. Saper,* 336 U.S. 328, 330 n.7 (1949); *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 163 (1946); *Sexton v. Dreyfus,* 219 U.S. 339, 344 (1911); 2 William Blackstone,

9

Commentaries.  In other words, creditors cannot recover post-petition interest on their claims.  ….

Two major exceptions to the rule have developed over time.  One is that creditors may recover post-petition interest when the debtor turns out to be solvent. *Ron Pair,* 489 U.S. at 246; *Vanston Committee,* 329 U.S. at 164, 67 S.Ct. at 240.  This exception is included in the Bankruptcy Code at 11 U.S.C. § 726(a)(5).  The second exception allows post-petition interest for secured creditors whose security is worth more than the sum of the principal and all interest due.  *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 372–373 (1988); *Vanston Committee,* 329 U.S. at 164.  This is codified at 11 U.S.C. § 506(b).

*Id.* at 155–56 (footnotes omitted).

Thus, not just persuasive law, but controlling law, supports the City's Claim.  Further, controlling law on how to interpret statutes in these situations dictates the outcome here.  As "legal rate" has an accumulated settled pre-Bankruptcy Code meaning, *Field,* 516 U.S. at 69–70; *Davenport,* 495 U.S. at 564; *Cmty. for Creative Non-Violence,* 490 U.S. at 739; *Midatlantic Nat'l Bank,* 474 U.S. at 501, and that meaning means the applicable state law rate, *Am. Iron & Steel,* 233 U.S. at 264; *Sexton,* 219 U.S. at 346; *accord Saper,* 336 U.S. at 328 n.7, there must be a clear indication by Congress in adopting the Bankruptcy Code to vary from that meaning.  There is no such clear indication.

While the United States Trustee and the Chapter 7 Trustee make various arguments concerning public policy, the Seventh Circuit has made clear that it is the rules of statutory interpretation, not public policy, that carry the day when faced with such situations.  *Pitcher v. Principal Mut. Life Ins. Co.,* 93 F.3d 407, 411 (7th Cir. 1996) (in the context of insurance statutes).  It may be true that having a uniform rate would simplify a trustee's responsibilities, treat creditors equally by giving them all the same interest rate, and would promote judicial efficiency.  These are legislative concerns, however, not judicial ones.  It is for Congress to legislate to the results the United States Trustee and the Chapter 7 Trustee seek, and it has not done so.

CONCLUSION

In light of the foregoing, the Objection is well taken.  The Chapter 7 Trustee must pay the City postpetition interest at the rate set by Illinois law, 735 ILCS 5/2-1303(a), and not the Federal Judgment Rate, 28 U.S.C. § 1961(a), as the Chapter 7 Trustee has done.  As the Debtor was solvent, section 502(b)(2) is suspended and the City is owed the legal rate of 9% interest on the City's Claim.

The Objection will be, therefore, SUSTAINED in the manner set forth herein.  A separate order to that effect will be entered concurrently herewith.

Dated: August 31, 2023                    ENTERED:

_____
Timothy A. Barnes
Judge, United States Bankruptcy Court

10